324-0546 Sarah Kubik as trustee of the Sarah J. Kubik Declaration of Trust and Jeffrey Kubik Appellants v. Darien Club Owners Association, Don Becker, Alan McDean, George Battaglia, et al., Appelese. All right. I apologize here. Mr. Nolan, are you arguing? No, your honor, I'm observing only. Some reason your screen is the biggest one I have. I'm sorry. No, not at all. Is it Mr. Scott? Yes, your honor. Yeah, Robert Scott for the appellees. All right. Let's get this right. Mr. Philbrick, you may proceed if you're ready. Thank you, your honor. My name is Charles Philbrick and I represent the plaintiffs appellate appellants in this matter, Sarah and Jeffrey Kubik, longtime residents of the Darien Club Homeowners Association. And we are on a Rule 304-A appeal in which the circuit court granted partial summary judgment and specifically interpreted the design, excuse me, the declaration in a way that we believe is incorrect as a matter of law. And we're asking the appellate court here to reverse the circuit court and to declare what the declaration really is intended to do in regards to improvements. What I'd like to do this afternoon is simply walk the panel through the critical document, the declaration briefly to demonstrate what the actual intent is. And then to speak briefly about two of the authorities that have been discussed in the papers, the Stobe case and the Saddle Hills case. And then finally touch briefly upon why this case matters. And so with that, let's turn to the declaration here, which was put in place in 1990. And the issue here, the movements, the association, defendant association, and the circuit court concluded that this declaration imparts upon lot owners the right to build fences and specifically perimeter fences such that the board or the design review committee is not allowed to make a rule prohibiting the construction of perimeter fences. Is that what the circuit court ruled? I understand the association made that argument, but is that the exact ruling of the circuit court? I believe it is. The design committee gets to decide. That's an interesting sort of inherent conflict with the circuit court's ruling because she said that lot owners have the right to build a perimeter fence subject to aesthetic limitations that the design review committee may approve or disapprove. But clearly what she found was an intent in the declaration to allow lot owners to build fences on their properties. But not to require the design committee to approve every lot perimeter fence. That's still up to the design committee. It still is up to the design committee based on the ruling. And the interesting factual aspect of that here is that the design review committee granted Mr. Becker his fence. They gave him a variance and allowed him to build the fence in his backyard, but they didn't allow him to do a perimeter fence in the backyard. It still had to be roughly within 20 feet of the pool as per the standard as articulated by the design review committee. Well, that wasn't good enough for him. And so began a drama that is still playing out in the circuit court to this day. But I submit to you that the circuit court erred when she concluded that the rule with regard to fences, that section 5.6 of the standard, that would be the March 18, 1998 standard, violated or was inconsistent with the declaration. And I submit to you that it was absolutely consistent with the declaration. So the entirety of her articulation warrants reversal. Under your interpretation, why can you have a 20-foot fence outside of the pool? Why can't you? And why can you? Is your essential argument that even a foot 20 feet out from the pool would be impermissible? It would, such a fence would be in violation of the standard. And then it would be up to the design review committee to whether to permit a variance or not. And the design review committee's determination on that would be final and binding. So they can permit a 20-foot fence, but not a perimeter fence? They could, the declaration is clear in that it gives the design review committee full authority to, one, determine what the standards are, and then, two, grant whatever variances they deem appropriate under the circumstances. So theoretically, yes, the design review committee could receive plans for a perimeter fence and conclude that it is appropriate and grant the variance and permission to build that fence. Doesn't the declaration also allow the design review committee, doesn't it specifically utilize the term promulgate standards? Yes, it does. And so who are we as a court of review, or any court, frankly, to sit there and say that what this design committee promulgates does or does not work? I mean, why are we in a better position than the DRC? Well, I would submit to you that you're not. I would submit to you that that is precisely the point, that we have a declaration here that creates a DRC, a design review committee. It gives it the authority to promulgate standards, and importantly, that section says that those standards are binding on everyone, and then gives the DRC the authority to grant variances where it deems appropriate. Well, the DRC did set standards, and these standards apply to all improvements. So it's the full range from homes to fences to sheds, you name it. The DRC has the authority to promulgate the standards, and those standards are binding on everyone. And in this particular case, the DRC, back in 1998, decided no fences, unless it's a pool fence, and then it should be within 20 feet of the pool. And then you also have to build the fence with materials and so forth that meet the aesthetic qualities of the DRC for approval. And that was the rule, and it was the rule for a very long time, and no one seemed to have a problem with it. Does the length of time matter in reality? That the design review committee regulation was in order if a court were to find that the declaration itself allowed perimeter fencing? So just because it was there a long time, does that mean it's immutable? No, not at all. But one of my points at the end was, why does this matter? And the fact that it's been in place for a long time, and the fact that the declaration that was at issue in the Saddle Hills case is very similar in terms of its structure, which is to prohibit improvements, to create a design review committee, and to have the design review committee decide what improvements are permissible and not permissible. This is a very similar structure for a homeowners association. So what I would submit to you is, this decision matters because declarations like this have been in place, and they've been in place for a long time. And this decision by the circuit court essentially flips it on its head and robs the design review committee of the control and the power that is bestowed upon it by the declaration. Thank you. So there's something I really would like to emphasize here as my time is winding down. And that is the order in which section 13 of the declaration is structured. First, we have a stated purpose, which is to preserve the natural beauty and setting, natural setting and beauty of the premises. Premises meaning all common and lots, everything. And then it says in that section, any and all improvements located or proposed therein shall be subject to the provisions of this article. Okay, we got our purpose and it concerns improvements. Then the second section is the establishment of the design review committee who's on it and so forth. Third is the establishment of the design review committee's responsibility. And this ties into Justice Brennan's point earlier on. The design review committee shall have the right and power to promulgate and amend from time to time written articular standards, policies, procedures, and guidelines, quote, the standards governing the construction, location, landscaping, and design of improvements. And interestingly, the circuit court read this part of this section during her ruling, her oral ruling. And she specifically stopped and left out the sentence that reads, any standards published by the design review committee shall be binding and enforceable on all owners. That's a hugely important step in this analysis here. We've got a purpose. We got a design review committee. We've imposed upon them a responsibility to promulgate standards and those standards are binding on everyone. And then we get to subsections four and five. It also allows the design review committee to amend the standards. Absolutely. Which means that the community has the power of the vote to change the standards as they see fit. And that's an interesting and important aspect of the case as it's playing out in the circuit court. Because what is alleged in the complaint, and which is obviously true, is that the lion's share of the people who live in this community, they don't want fences. We have a community that's built around some beautiful ponds and it's been laid out so as to enhance views and access, not necessarily access, but to enhance the natural beauty of the land so that all neighbors have these unobstructed views of these beautiful ponds, which many of the lots run back to. And so what's so clear in section 1304 is that language in beginning of section A, no improvements of any nature whatsoever shall be commenced, constructed, altered, added to, or maintained upon any part of the premises in violation of the standards. What could be more clear? No lot owner has the right to make any improvements that are not consistent or in violation of the standards unless and until approved in writing by the Design Review Committee. So the Design Review Committee... Excuse me, the standards as amended from time to time. Precisely. And the standards that were in play at this time are the standards that were promulgated in March 18, 1998. Those are the standards in play at the time that Mr. Becker was granted a variance that allowed him to build a fence around his pool. The variance allowed him to go beyond 20 feet in order to accommodate some vegetation. But for the most part, the variance required the fence to be within 20 feet of the pool, not around the perimeter of his backyard. Excuse me, is there any requirement within the standards that any required standards be in compliance with setback regulations, be in compliance with zoning regulations, be in compliance with statutory regulations so that homeowners might have obligations such as setbacks, et cetera, that they cannot violate? Or do they go so far as to contemplate those when they create these standards? Yes, absolutely, you're correct. The particular standard that we're discussing indicates that fences in general are prohibited with the exception of pool fences. Why? Because the standard states that it is the law of the land there in Darien, Illinois that if you've got a pool, you've got to put a fence around it. Yes, throughout the standards, there's a recognition that first come the local laws and regulations, and they have to be abided by not only the design review committee, but all the lot owners as well. Local meaning whom? Local meaning whatever state or local municipality regulation ordinance or law. I'm asking for your hierarchy. What's the hierarchy? The committee, the county, the state, which takes precedence? I don't know that I can answer that other than to say that the design review manual, that the standard is subservient to all of those laws or regulations that are legislation that applies to the property. OK, thank you. And it specifically says so. I mean, that's very clear in the standard. Thank you. Justice Brittani, any other questions? Yeah, I have just a few follow-ups. I'm going to call it the Becker board of directors. He was elected to the board of directors, correct? He was, yes. And you seem to cast dispersions that he did so in order to change the design review committee. Precisely. Isn't that just democracy in action? Well, it would be if Mr. Becker didn't go about violating the act, the declaration, the bylaws, and his fiduciary duty in order to bring about the changes he wanted to change. And that is precisely the drama that's playing out in the circuit court. And you contend that the declaration unambiguously precludes all fencing except as permitted by the design review committee? I would agree with that statement. I would put it more broadly, which is that the declaration prohibits any and all improvements whatsoever unless and until plans for such improvements are submitted to the design review committee that comply with the standards and are thereafter approved by the design review committee. And so that would encompass not just simply fences, but houses, driveways, mailboxes. I mean, the design review, assuming the standards are very detailed. And for instance, you can't have a shed. That's a specific improvement that's delineated. And the standard says no sheds. The standard for garages is it must be an attached garage. You can't have an unattached garage. There's just a whole litany of standards. And they're actually very consistent with the purpose, which is to preserve the architectural and aesthetic appearance of the premises. And here the rule on fences was unless it's a pool, no fences. And if you have a pool, one needs to be within 20 feet of the pool. And two, you got to submit plans that the design review committee approves. How do you square that blanket prohibition unless approved by the design review committee with those improvements or additions to residences that are specifically and unequivocally precluded in the declaration, such as exterior antenna, or I think it was antennas and air conditioning units, window air conditioning units. Those are specifically says no, no, no. And I would agree with you that there are three specific prohibitions that would be in section 1303, which begins with telling us what the DRC is supposed to do. And it says the following basic standards shall apply to all lots. I don't believe it's possible to read these three, what should we call these three basic standards as being a laundry list of all of them such that everything else is deemed permissible. No, not at all. And if you look at them, that makes no sense because the first one's antennae. And it's basically saying you can't have antennae or satellite dishes because the association is going to create a common area where everybody's needs in that regard is going to be fulfilled. The next one is structural impairment. You're not allowed to do anything that's going to impair the structure of an existing improvement. Well, that's sort of common sense and doesn't imply that everything else is suddenly permitted. And the last one is exterior appearances. As you aptly summarized, you can't have foil. You can't have bright, shiny things. You can't have window air conditioning units. And the only thing you can have on your roof is a chimney or a vent stack. But again, you can't read these three as being the sum and substance of all prohibited improvements because if you do that, read it that way, then the rest of Section 13, be it Sections 1, 2, 4, and 5, really become meaningless and toothless. So I feel like I've gotten more than my fair share of time here. And so let me just finish very quickly. I have one more question. Oh, sir, I'm sorry. Lastly, there was a request to admit served upon Mr. Kubik attaching, one, the original declaration, and two, what appeared to be a 1994 Design Review Committee standard. Is that actually before the court, under the pleadings, or is it not? I don't believe it is. Okay, then I shall ignore it unless the other counsel convinces me it is. Okay, thank you. All right, Mr. Kubik, you will have an opportunity in rebuttal. Thank you. With that, we will turn to Mr. Scott. Good afternoon, Justices. Thank you for hearing our case. Just to start out, and then I also would welcome questions. This case rose out of our counterclaim for declaratory judgment. And we asked Judge Hayes in the circuit court to interpret Section 1305 of the declaration, and also its interplay with Section 5.6 of the 1998 Design Review Manual. Judge Hayes did that. What she found, what she looked at was 1305. And what 1305 provides is it states there should be no construction of improvements, including homes, fences, sheds, antennae, driveways, and several other things. And they shall not be commenced or maintained before and until three copies of the plans have been submitted to the DRC, which is the Design Review Committee, and approved. So Justice Bertani, I think you asked a question of counsel concerning whether a ruling would rob or take power away from the Design Review Committee. It won't. The Design Review Committee will do the same thing no matter what your ruling is. That's kind of the odd thing about this. Our interpretation and Judge Hayes' interpretation of 1305 is that improvements are allowed. If not, you wouldn't have homes on the lots, you wouldn't have driveways, you wouldn't have any of that stuff, including fences and sheds. But you can't commence construction and installation until approval by the Design Review Committee. So that is the clear and plain meaning of 1305. Justices, it wouldn't make any sense any other way because otherwise it would say improvements are prohibited. That would mean homes are prohibited, fences, all these other things that we've mentioned, and they're not. Obviously, that's what we have at the Darien Club is all of this stuff, including homes, driveways, fences, et cetera. So where does the problem come in? The problem comes in because of Section 5.6 of the 1998 Design Review Manual. Now that's easy. There's no doubt that that's clear and plain. It simply says fences of any type are prohibited on lots except as required for in-ground pools, which are required by code, which you talked with counsel about building code or statute or ordinance. So the problem that the plaintiff's appellants had was they understand that the law is that a rule or regulation that's promulgated by a board or a committee cannot contradict, contravene, or conflict with the declaration. So that is how plaintiffs' appellants came to decide that 1305 means that there can be no improvements, that all improvements are prohibited unless and until the Design Review Committee says that they can be put in. But that's a tortuous reading, and I understand why they read it that way because otherwise they lose, because there is no question that the 1998 Design Review Manual, Section 5.6, is in conflict with the declaration if improvements are allowed. So honestly, that's the case, and it's purely a legal question. And what Judge Hayes did when she looked at this was find the following. So she found, and obviously we agree, the declaration does not intend a complete prohibition of all improvements. If it did, it wouldn't make sense. She said also if fences were prohibited, it would render the condition subsequent meaningless. What she meant by condition subsequent is if you look at the language of 1305 of the declaration, when you want to put in an improvement, you have to submit three sets of plans to the committee. They review it and approve it. Well, you wouldn't need that if everything was prohibited. Judge Hayes also found if owners had no right to erect fences or other improvements, there would be no need for a design review committee. And then lastly, she said, this is all in the transcript that's in the trial court record. It's the October 24, 2023 transcript from the hearing on the summary judgment. If improvements were prohibited, it would require the prohibition of construction of homes, driveways, et cetera. So honestly, that's the case. Now her finding, and I think Justice Brennan, you kind of asked Mr. Philbrick specifically what might her finding have been. Her finding was the design review committee lacks authority to promulgate a rule prohibiting construction of fences as that rule. And that's section 5.6 of the 1998 manual conflicts with the intent of the declaration. She further declared that Darien Club is authorized to allow the erection of perimeter fences pursuant to 1305 of the declaration. So that was the finding by the trial court. I'm hearing something, somebody speaking on there. Mr. Nolan, why don't you move your microphone for now. There we go. Okay, thank you. I'd like to discuss if you're interested, but I'm also open for questions. The primary case that we rely on and that Judge Hayes relied on was Stobe versus 842 Bradley Place. In that case, in the declaration, so it's the declaration, article seven, it provided no unit can be leased. It was a 12 or 13 unit building. It's a first district case from 2016. But it said no unit can be leased for less than six months. This was to prevent transients, et cetera. Then the board attempted to pass a rule that no more than 30% of the units can be rented at any time. Okay, so that rule conflicted and contradicted part of what the declaration said. And the holding of that case is the board lacks authority to promulgate a rule restricting leasing because the rule conflicts with the declaration's intent. And that's what we're saying is this case. Section 5.6 of the 1998 Design Review Manual conflicts with 1305 of the declaration. Another case that was cited primarily by the appellants which they looked to is Saddle Hills versus Cavallari. That's a second district 1986 decision. Now that case is completely distinguishable. What happened in that case was an owner constructed a fence before submitting any plans to the Architectural Review Committee. Of course, that's wrong. Just like in our case, you're not supposed to do that. You can't commence construction. Before getting approval, that trial court issued a mandatory injunction ordering the removal of the fence. But that wasn't the issue before the court. The court simply held that the trial court's finding that the committee existed and consisted of only one member was not against the manifest weight of the evidence. So while their provision in their declaration was similar to 1305 of ours, they never got to that. They were not asked to interpret what that section said. So that case is an apposite and we don't think it should be relied upon. Does anybody have any questions? Yeah, I just have more of a housekeeping question. Did the trial court expressly rule upon your April 27, 2023 cross motion? I mean, actually on Kubik's cross motion. I know she granted yours. I mean, implicitly, you can't have one without the other. But did she actually rule on it? I believe she did and denied it. Now, Justice, I invite you to ask Mr. Philbrick to answer that also because I wasn't around a few years ago. But no, my understanding is the only summary judgment entered in this case is ours on the counterclaim for declaratory judgment. Okay, thank you. Anyone else? I guess I should say I defer. You do not. All right, Mr. Scott, do you have any closing remarks? I do. Your Honor, the Section 1305 is clear by the words that the intent of it is to allow improvements. It just doesn't make sense any other way. And the problem with their argument is all improvements they say then would not be allowed. And of course they're allowed. I mean, homes are allowed. That's what this community is all about. And so it really becomes simple after that because if 1305 allows improvements, then there's no question that Section 5.6 of the 1998 Design Review Manual conflicts with it. And then there's also no question that under good Illinois law, that that would have to be stricken. You cannot promulgate a rule that conflicts with the declaration. So I don't have anything more than that unless somebody has a question, but I do appreciate all of you looking at this case and giving us this chance to argue it. Thank you. Thank you, Mr. Scott. Mr. Philbrick, rebuttal. You're muted, Mr. Philbrick. Thank you, Justice. To answer the specific question across motion, first, we advocated that the association's motion for partial summary judgment should not be considered. It would lead to piecemeal summary judgment proceedings. It was essentially too narrow of a question. The circuit court disagreed, exercised her authority to hear the motion. We cross moved with respect to the issue of the interpretation of the declaration. And we also raised two other issues. The circuit court concluded that those two other, the motion was not a cross motion because it raised other issues. And she denied those issues, denied the motion without prejudice as to those issues. And she granted the association's motion with respect to the interpretation of the declaration. I want a couple of things. I want to enforce what it is that she held. Defendant is not authorized to promulgate a rule prohibiting the erection of perimeter fences that comply with reasonable aesthetic standards established by the Design Review Committee. Quote unquote, that's what she held. Well, how is it that defendant is not authorized to promulgate a rule prohibiting the erection of perimeter fences? Because she agreed with the association, the movement, that the declaration imparts a right on the owners to have perimeter fences. That's the only way you get there. But the point of the structure is to create a Design Review Committee, give it authority to write the rules on what's permissible and what's not permissible with respect to improvements, and then prohibit all improvements unless until designs are submitted that comply with the standards and are approved by the Design Review Committee. That way, the function of the Design Review Committee and the purpose of it is fulfilled. And this ruling pulls the rug out from underneath it. This notion that you can't have homes, I mean, that's a silly argument because this whole community is built out. Obviously, standards were written with regard to homes and driveways and you name it, there are standards. Take a look at them. And homes were built. And fences were prohibited unless required by law. And in that case, it couldn't be more than 20 feet away from your pool. It was utterly consistent. That rule is utterly consistent with the declaration that states repeatedly that there can be no improvements whatsoever unless and until plans complying with the standards are submitted and those plans are approved by the Design Review Committee. And of course, the Design Review Committee reserves the right to issue variances from its standards. It has that power. This turns all of that on its head and it needs to be reversed. Why is that important? Because in the context of the underlying litigation, what Mr. Becker told the community was he couldn't enforce 5.6, the rule on fences, because it conflicted with the declaration. And our lawyers have told us we can't enforce this and so we're not gonna. It was a ruse. The whole thing was a ruse. And we asked that this- And where does that appear on the record, Mr. Philbrick? That statement that you just made, that appears in the record where? I don't believe that it appears in the record at all. Okay, thank you. And the reason, well, it does in the sense that the third amendment complaint is in the record. Okay, with that statement in it, can you cite to the C record? Where he made that statement? Because you know we need to argue what was in the record only, Mr. Philbrick, okay? That's perfectly appropriate. And I don't know that I could find it for you-  Right here, right now in this minute. I would ask for permission to submit such a reference to the court following argument and I would run it past Mr. Scott before doing so. Mr. Philbrick, are you suggesting that it's other than in the complaint? Are you conceding it isn't anywhere else? I mean, we can find the complaint. We've seen the complaint. Right. Is it anywhere else or? It's unclear to me whether any of the amended complaints are in the record off the top of my head. I would expect that it is in the fifth and sixth amended complaints. And I don't know if those pleadings are in the record that is before you. What is in the record before you is the narrow question and the motion papers with regard to this motion for partial summary judgment regarding the interpretation of the declaration. And I submit to you that the proper interpretation of the declaration matters. All right, Mr. Philbrick, Mr. Philbrick. If you could conclude, your time is up. Thank you. Absolutely. Thank you. I'd ask that the circuit court be reversed. I'd ask that the court declare that the declaration is intended to prohibit the construction of any improvements that do not comply with the design review committee standards and that any improvements have to receive the approval of the design review committee. That the declaration does not confer a right on lot owners to build fences, let alone perimeter fences. And that section 5.6 of the March 18, 1998 design manual is consistent with the declaration in every respect. And I thank you for the panel's time and consideration of these issues. The court thanks both sides for spirited argument. We will take the matter under advisement and issue a decision in due course. Court is adjourned until the next oral argument. Thank you. Thank you.